CASE 41—PETITION EQUITY—JANUARY 24.

# Page and wife vs. McKee, &c.

*APPEAL FROM LOUISVILLE CHANCERY COURT.*

1. A foreign court cannot, by its judgment or decree, pass the title to land situate in another country; neither can it bind such land by a judgment or decree, that the land, in default of the defendants conveying it, shall be conveyed by deed of its own officers to the plaintiffs. Such a conveyance made by its officers would be treated in this country, where the land is situated, as a mere nullity.

2. William J. Lodge died intestate in Indiana, leaving a large estate, real and personal, therein, and also two tracts of land in Trimble county, Kentucky. He left as his heirs-at-law three surviving children, who were of full age, and the children of his daughter, Mrs. McKee, who were minors. His heirs were all residents of Indiana, except his daughter, Mrs. Page, who resided upon the lands in Trimble county, Kentucky. In the partition and distribution of the estate of the intestate by the Jefferson circuit court, in the State of Indiana, in a suit to which all the heirs were parties, the Kentucky lands were allotted and set apart to Mrs. Page; and, in pursuance to the judgment of the court, these lands were conveyed to her by deed duly executed by the other two adult heirs and by the guardian of the minor heirs. Thereafter, the minor heirs, together with their father, became residents of the city of Louisville, Kentucky, and thereupon Mrs. Page and her husband instituted suit in the Louisville chancery court against said minor heirs to perfect her title to the Trimble county, Kentucky, lands. This suit was dismissed by the chancellor. *Held*—That the Louisville chancery court *had jurisdiction*, and should have proceeded to a final adjudication, and by proper orders *directed a conveyance from the minor defendants*, and perfected such order by proper deeds of quit claim.

3. As the Indiana court had jurisdiction of that portion of the estate, real and personal, therein, and of the parties, and as Mrs. Page brought the suit, the judgment of partition and distribution of the Indiana court is conclusive upon her as to her interest in the Indiana real estate and personalty; then her suit in the Louisville chancery court

is by no means for a partition; for, as to this, she is already con-
cluded; but it is what it purports to be, a personal suit against the
minor heirs to compel them to surrender to her, their legal title to one
fourth of the Kentucky lands, in pursuance of the Indiana judgment,
they having received, by proceedings in the Indiana court, their full
share of their ancestor's estate; and this foreign, judgment is at least
*prima facie* good and valid as to the partition, though not good as to
the conveyance, and the Kentucky courts should enforce the equities
growing out of it, at least until it is successfully assailed.

BULLITT and
W. S. PRYOR,                                        For Appellants,
                        CITED—
2 *Dana,* 458 ; *Cates vs. Woodson.*

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Augusta Page, the wife of B. F. Page, was a child and
heir-at-law of William J. Lodge, who died intestate in
the State ,of Indiana, leaving a large real and personal
estate therein ; also two tracts of land in Trimble county,
Kentucky. The intestate left three surviving children
then arrived at majority, and the appellees, who were all
minor grandchildren, by his deceased daughter, Mrs. Mc-
Kee ; and all of whom, save Page and wife, then resided
in Indiana.

Some time after the decease of their ancestor, Page
and wife brought suit in the Jefferson circuit court, of
Indiana, in which administration on his estate had been
granted, and wherein the other heirs lived, for the pur-
pose of settlement and partition, making the administra-
tor, the adult heirs, and these minor grandchildren and
their statutory guardian, parties defendants, and setting
out that the decedent, in his lifetime, had, by parol, given
Mrs. Page the Trimble county lands; that, on the faith of
his promise to convey the same to her, she and her .hus-
band had gone on said lands and made valuable and

lasting improvements, to the value of about four thousand dollars; and that it had been agreed between the adult heirs and the statutory guardian for the minors that she should still have these lands, but at the valuation then fixed on it, not including the improvements, of eleven thousand dollars, and that nothing was to be allowed for improvements; and should this prove to be more than Mrs. Page's share of the estate, the overplus should be paid to the estate, and what it should lack should be paid to her on final settlement; and the court was asked to confirm this agreement and settlement, and perfect it by proper deed of conveyance.

The parties were brought before the court by process; the adult heirs answered, confessing the allegations, and prayed also for a confirmation, and so did the statutory guardian. The court subsequently appointed another person as guardian *ad litem*, and he put in the usual answer, controverting all matters detrimental to the infants, and praying that their rights be protected. Afterwards, the court made another order, that, as the minors had a statutory guardian, he should be permitted to conduct and control the defense and suit for his wards.

The court finally adjudged that said agreement and partition be confirmed, and directed that a deed of quit claim by all the defendants be made; and, in pursuance thereof, a deed by the adults in person, and the minors by their statutory guardian, was made and acknowledged and certified to this State.

Robert S. McKee, the father and guardian for these minor grandchildren of the intestate, subsequently moved to the city of Louisville, in this State, and brought with him these minors; and Page and wife having sold the land, and the purchasers being dissatisfied with their title, they brought this suit in the Louisville chancery court, in

which the statutory guardian joins, to compel them to execute this judgment and make proper deeds of conveyance; they being served with process, and guardian *ad litem* being appointed, the court subsequently set aside the appointment, and dismissed plaintiff's petition for want of jurisdiction, because, as it says, this is a suit for partition, and should be brought in Trimble county; and we are asked to correct this judgment.

If this be a simple suit for partition, the court was right; but if it be to enforce a foreign judgment of partition, and to have a conveyance accordingly, it was erroneous.

It is shown that intestate was both a citizen and domiciled in Indiana at the time of his death; that all his personal estate was there; also all his real estate, save the Trimble county lands; and that all his heirs, save Mrs. Page, were also then domiciled citizens of Indiana.

The Indiana court, therefore, had jurisdiction of all the parties and all the subject-matter of the suit, save the Kentucky lands; and whilst it could not perfect its judgment of partition by an enforced conveyance, yet the adult heirs were voluntarily bound by the judgment, and then voluntarily joined in the conveyance; and, so far as they are concerned, they are estopped from setting up any claim; but, as to the minor heirs, the matter is different.

Mr. Justice Story, in his Conflict of Laws (*sec.* 543, *p.* 914), lays down the law thus: that "although every nation may thus rightfully exercise jurisdiction over all persons within its domains, yet we are to understand that, in regard thereto, the doctrine applies only to suits *purely personal, or to suits connected with property within the same sovereignty;* for, although the person may be within the territorial jurisdiction, yet it is by no means

true that, in virtue thereof, every sort of suit may there be maintainable against him. A suit cannot, for instance, be maintainable against him to bind his property situate elsewhere; and, *a fortiori*, not so as absolutely to bind his rights and titles to unmovable property situate elsewhere." And in same section he says: "A foreign court cannot, by its judgment or decree, pass the title to land situate in another country; *neither can it bind such land by a judgment or decree, that, in default of the defendants in the suit conveying, it shall be conveyed, by deed of its own officers, to the plaintiffs. Such a conveyance, made by its officers, would be treated, in·this country, where the land is situated, as a mere nullity.*"

There can be no doubt but that·the conveyance of these minors, by their statutory guardian, in pursuance of said judgment, as to the Kentucky lands, was invalid and did not pass their legal title. But it appears, in this case, that, by proceedings in the Indiana courts, the other adult heirs took their part in real estate in that State, and these minor heirs were assigned their portion in personalty, money, stocks, bonds, &c., and that Mrs. Page had none allotted to her save the Kentucky lands; therefore, we are to inquire into Mrs. Page's equity to have a proper conveyance, in pursuance to this Indiana judgment.

Story, in his Conflict of Laws (*sec.* 609, *p.* 1004), says, that the provision of the United States Constitution requiring that full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State, "does not prevent an inquiry into the jurisdiction of the court, in which the original judgment was rendered, to pronounce the judgment, nor an inquiry into the right of the State to exercise authority over the parties or the subject-matter, nor an inquiry

whether the judgment is founded in, and impeachable
for, a manifest fraud."   "It did not make the judgments
of other States domestic judgments, to all intents and
purposes."

In section 610 he says : " As to judgments *in personam*,
in suits between citizens, in suits between foreigners, or
between citizens and foreigners, in all cases they are
deemed of equal obligation, whoever are the parties."
And even among those foreign jurists, who maintain a
different opinion, as Boullenois, they concede, that "if
the judgment is rendered in a suit between a native of
the country where the judgment is pronounced, and a
foreigner, in such a case, if the foreigner be the plain-
tiff, then the judgment ought to be conclusive."

As the Indiana court had jurisdiction of that portion of
the estate, real and personal, therein, and of the parties,
and as Mrs. Page brought the suit, the judgment is con-
clusive upon her as to her interest in the Indiana real
estate and the personalty.   Then her suit here is by no
means for a partition ; for, as to this, she is already con-
cluded ; but it is just what it purports to be, a personal
suit against those minor heirs to compel them to sur-
render to her their legal title to one fourth of the Ken-
tucky lands, in pursuance of the Indiana judgment ;
they having received, by proceedings in the Indiana
court, their full share of their ancestor's estate, and this
foreign judgment is at least *prima facie* good and valid
as to the partition, though not good as to the convey-
ance ; and our courts should enforce the equities grow-
ing out of it, at least until it is successfully assailed,
which, so far from being the case, all the evidence goes
to sustain it, and strengthened, as it still is, by the ap-
proval of their statutory guardian, even in this suit.

From section 93 to 105, Civil Code, inclusive, are defined the classes of suits that must be brought within certain local jurisdictions, to none of which classes this suit belongs. Section 106 provides, that "*every other action may be brought in any county in which the defendant or one of several defendants resides, or is summoned.*" Then, unless a suit falls within the classes designated by the previous sections, it comes within this general class where the defendant's locality gives jurisdiction. We are clearly of opinion, therefore, that those defendants, being within the jurisdiction of the chancellor, that he should have proceeded to a final adjudication, and, by proper orders, directed a conveyance from those minor defendants, and perfected such order by proper deeds of quit claim; and to that end, on the return of the cause, he should appoint another guardian *ad litem*, and then proceed to final judgment as herein indicated.

Wherefore, the judgment is reversed.